[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10328
Non-Argument Calendar

_____

D. C. Docket No. 05-61061-CV-JIC
BKCY No. 04-26458-BKC-RB

In Re:  BURTON D. GREENBERG,

Debtor.

_____

RHINO CELLULAR, INC.,

Plaintiff-Appellant,

versus

BURTON D. GREENBERG,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 9, 2006)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

In this bankruptcy case, Appellant Rhino Cellular, Inc. ("Rhino") appeals the dismissal of its complaint for failure to prosecute. Both the bankruptcy court and the district court rejected Appellant's argument that its failure to appear at the pretrial hearing was the result of excusable neglect. After review, we reverse.

## I. FACTS

On October 22, 2004, Appellee Burton D. Greenberg ("Greenberg") filed a voluntary Chapter 7 bankruptcy petition in United States Bankruptcy Court in the Southern District of Florida. Greenberg's petition listed Rhino as an unsecured creditor with a disputed claim of $600,000.

On January 24, 2005, Rhino filed a complaint in the bankruptcy proceding seeking to have the $600,000 debt declared non-dischargeable. See 11 U.S.C. § 523(c). Representing Rhino was the Miami law firm Buchanan Ingersoll. Alan R. Poppe ("Poppe") and Hans C. Beyer ("Beyer"), both attorneys for Buchanan Ingersoll, signed the complaint on behalf of Rhino. Beyer acted as the lead counsel.

After Rhino's complaint was filed, the bankruptcy court immediately set a pretrial conference date of March 15, 2005. In a related order dated January 24, 2005, the bankruptcy court directed that Rhino prepare a proposed pretrial order at

2

least five days before the conference, and directed that all discovery be completed by the date of the conference. On February 22, 2005, debtor Greenberg filed his answer to Rhino's complaint and served it on Rhino's counsel of record, Buchanan Ingersoll.

Unbeknownst to Greenberg, on February 14, 2005, Beyer had resigned from Buchanan Ingersoll and accepted a partnership position at the Tampa law firm of Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox ("Saxon Gilmore"). Following Beyer's departure, Buchanan Ingersoll sent a letter to Rhino asking whether Rhino wanted to continue being represented by Buchanan Ingersoll or to transfer representation to Beyer's new firm, Saxon Gilmore. Rhino eventually instructed Buchanan Ingersoll that it intended to transfer its representation to Saxon Gilmore. Rhino, however, did not send this letter until the second week of March because Rhino's principal was out of the country at the time of Buchanan Ingersoll's inquiry.

Because Beyer was no longer a part of Buchanan Ingersoll and Rhino had not yet officially transferred representation to Beyer's new firm, Beyer felt that he was no longer empowered to represent Rhino and could not file on its behalf after February 14, 2005. Lacking the official authority to act on Rhino's behalf, on March 4, 2005, Beyer conferred with Buchanan Ingersoll regarding the disclosure

and discovery requirements in the Greenberg matter. Beyer specifically suggested the possibility that Buchanan Ingersoll file for a continuance on account of the transfer of representation. Despite this conversation, Buchanan Ingersoll neglected to file for a continuance and conducted no discovery on Rhino's behalf.

During the week prior to the March 15, 2005 pretrial hearing, Greenberg's counsel attempted unsuccessfully to contact Rhino's counsel by calling Buchanan Ingersoll on a number of occasions. On March 11, 2005, a representative of Buchanan Ingersoll left a voice message for Greenberg's counsel stating that Beyer had resigned from Buchanan Ingersoll and had taken Rhino with him as a client. Because the message did not provide Greenberg's counsel with contact information for Beyer, Greenberg ceased in its efforts to contact Rhino's counsel.

Rhino failed to provide Greenberg with a proposed pretrial order or to conduct any discovery prior to the March 15, 2005, hearing. Moreover, neither Rhino nor its counsel appeared at the March 15, 2005, hearing. In light of these facts, at the hearing, Greenberg moved for and the bankruptcy court granted a dismissal of Rhino's complaint. Although the bankruptcy court's dismissal order did not explicitly state that the dismissal was with prejudice, "[u]nless the court in its order for dismissal otherwise specifies," a dismissal for failure to prosecute "operates as an adjudication upon the merits." Fed. R. Civ. P. 41(b); Fed. R. Bankr. P. 7041 (making Rule 41(b) applicable to adversary proceedings in bankruptcy

4

court). Accordingly, the bankruptcy court's order was a dismissal with prejudice.

On March 17, 2005, after receiving Rhino's letter authorizing it to act as Rhino's new counsel, Saxon Gilmore filed a notice of appearance through Beyer. However, the bankruptcy court mis-docketed the substitution of counsel, instead erroneously recording Beyer's Notice of Appearance as a notice by Poppe and Buchanan Ingersoll. Because Beyer's substitution was mis-docketed, Beyer did not receive from the bankruptcy court any notice of the March 15, 2005, dismissal of Rhino's complaint. The dismissal was forwarded to Buchanan Ingersoll, but Buchanan Ingersoll apparently took no action.[1]

On April 6, 2005, Beyer checked the bankruptcy docket and discovered the dismissal. On April 8, 2005, Beyer filed on behalf of Rhino a motion to reconsider the dismissal of the complaint, arguing that the failure to appear was caused by excusable neglect. See Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. In late April 2005, the bankruptcy court held a hearing concerning the motion to reconsider.

In an order dated May 5, 2005, the bankruptcy court denied the motion, reviewing the facts under the four-part excusable neglect test articulated in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnerships, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993). Under Pioneer, a court must consider four

---

[1]Poppe and Buchanan Ingersoll did not file a motion to withdraw as attorney of record until May 19, 2005.

factors to determine whether neglect was excusable. Those four factors are: (1) the danger that the neglect caused prejudice; (2) the length of the delay resulting from the neglect and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the party guilty of neglect; and (4) whether the party guilty of neglect acted in good faith. Id.

The bankruptcy court concluded that Rhino's failure to appear was not the result of excusable neglect. The bankruptcy court reasoned that: (1) a finding of "excusable neglect" would prejudice Greenberg because it would result in added costs and fees; (2) a finding of "excusable neglect" would unfairly delay resolution of Greenberg's bankruptcy filings; (3) Rhino's omissions were entirely the fault of Rhino's counsel and Rhino itself; and (4) Rhino had failed to act in good faith by filing a complaint and then failing to take any further action until after the complaint was dismissed.

Rhino timely appealed the bankruptcy court's denial of its motion to reconsider in United States District Court for the Southern District of Florida. In an order dated December 1, 2005, the district court reviewed the Pioneer factors and affirmed the bankruptcy court's decision.

The district court disagreed with the bankruptcy court's findings with respect to the first two Pioneer factors. The district court first disagreed that Greenberg would experience prejudice if Rhino's omissions were found to be the

6

result of excusable neglect. The district court pointed out that any prejudice caused by the costs incurred by Greenberg could be ameliorated by the bankruptcy court's order for Rhino to pay Greenberg's costs and fees. The district court secondly disagreed that a twenty-one day delay for resolution of Greenberg's bankruptcy filing would unduly delay justice for Greenberg.

As to the third Pioneer factor, the district court agreed with the bankruptcy court that the delays were caused by the negligence of both Rhino and Rhino's counsel. Finally, as to the fourth Pioneer factor, the district court agreed with the bankruptcy court that Rhino's counsel had not acted in good faith because he "neglected to monitor a new case in which [his client] was seeking relief, during a time when counsel chose to change firms."[2]

The district court concluded by stating that "[a]lthough there is little danger of prejudice to Greenburg [sic], the Court concludes that the bankruptcy court did not abuse its discretion in dismissing the adversary complaint for failure to attend the pretrial conference. The fault of [Rhino] in creating the dismissal and delay and the lack of good faith overcome the small danger of prejudice."

On December 30, 2005, Rhino timely appealed the district court's December

---

[2]The district court also noted that Beyer had asserted that he had never known about the March 15, 2005 hearing date, even though "the facts clearly show he did." Although Rhino retracted this argument in its reply brief, the district court insinuated that Beyer had been dishonest by initially denying his awareness of the March 15, 2005 hearing date.

7

1, 2005 order affirming the bankruptcy court's dismissal of Rhino's complaint.

## II. DISCUSSION

When reviewing decisions originating in bankruptcy court and appealed to district court, we sit as a second court of review, employing the same standards of review as the district court. In re New Power Co., 438 F.3d 1113, 1117 (11th Cir. 2006). The denial of a party's motion for reconsideration on grounds of excusable neglect is reviewed for abuse of discretion. Am. Bankers Ins. Co. v. Northwestern Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999); see also Whittlesey v. Weyerhauser Co., 640 F.2d 739, 742 (5th Cir. Unit A Mar. 26, 1981) (reviewing bankruptcy court's determination that there was no adequate showing of excusable neglect for abuse of discretion).[3]

As this Court recently reiterated, "a dismissal with prejudice, whether on motion or sua sponte, is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337-38 (11th Cir. 2005) (quotation marks and citation omitted; emphasis in original); see also Gratton v. Great Am. Commc'ns., 178 F.3d 1373, 1374 (11th

---

[3]The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Cir.1999); Mingo v. Sugar Cane Growers Co-op. of Fla., 864 F.2d 101, 102 (11th Cir.1989); Boazman v. Econ. Lab., Inc., 537 F.2d 210, 212 (5th Cir. 1976); Flaksa v. Little River Marine Const. Co., 389 F.2d 885, 887-88 (5th Cir.1968). When considering whether to uphold a dismissal with prejudice, "we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985).

Indeed, this Court has emphasized the severity of dismissal with prejudice in the context of a Rule 60(b) motion alleging excusable neglect under circumstances nearly identical to those presented here. Silas v. Sears, Roebuck & Co., 586 F.2d 382 (5th Cir. 1978). In Silas, the Plaintiff filed suit on October 14, 1977, and the district court scheduled a pretrial conference for February 21, 1978. Id. at 384. The district court order also "required counsel to meet no later than ten days prior to the conference and to prepare a pretrial stipulation, executed by counsel for all parties, to be filed no later than five days prior to the conference." Id.

On January 20, 1978, the defendant in Silas served interrogatories and a request for production of documents on plaintiff, but never received a response to the interrogatories. Id. On February 17, 1978, the defendant in Silas filed a unilateral pretrial stipulation because plaintiff never took any action in that regard. Id. On February 21, 1978, plaintiff's counsel failed to appear at the pretrial

9

conference, whereupon the district court granted defendant's oral motion for a dismissal with prejudice.

Within thirty days after the dismissal, on March 20, 1978, counsel for plaintiff filed a motion under Rule 60(b)(1), seeking relief from the order of dismissal on grounds of excusable neglect. Id. Plaintiff's counsel gave no other explanation for his multiple omissions than that he had failed to place the pretrial hearing on his calendar. Id. The district court denied plaintiff's motion. Id.

Despite the clear neglect by plaintiff's counsel in Silas, this Court concluded that the district court had abused its discretion by denying plaintiff's Rule 60(b) motion and dismissing his complaint with prejudice. Id. at 385-86. We noted that although plaintiff had failed to respond to interrogatories, failed to submit a proposed pretrial order, and failed to attend the pretrial conference, "[t]he record reveal[ed] no action by the district court to achieve compliance with pretrial procedures prior to imposition of the drastic sanction of dismissal." Id. at 385. In addition, the Silas Court explained that "there is neither the clear record of delay nor the contumacious conduct by the plaintiff which is required to support an order of dismissal with prejudice rather than the imposition of lesser sanctions." Id. at 385-86 (internal quotation marks omitted); see also E. F. Hutton & Co. v. Moffatt, 460 F.2d 284 (5th Cir. 1972) (holding that district court abused its discretion by dismissing action after plaintiff failed to appear at pretrial conference).

10

In the instant case, the actions of Rhino's counsel are entirely analagous to those by plaintiff's counsel in Silas. Though evidence of deficient performance, the omissions by Rhino's counsel transpired over only a few weeks and did not demonstrate a "clear record of delay." Cf. Martin-Trigona v. Morris, 627 F.2d 680, 682 (5th Cir. 1980) (upholding dismissal with prejudice where "appellant failed to respond to the motion to dismiss for thirteen months after being ordered to do so three times: twice by written orders and once by oral direction to appellant's counsel"). The delay caused by Rhino's failure to appear was minimal, and the length of that delay was exacerbated by the bankruptcy court's error in docketing the Notice of Appearance by Beyer's new firm. While these circumstances do not justify careless legal representation, they also do not warrant the drastic remedy of dismissal with prejudice.

In terms of the Pioneer factors regarding excusable neglect, only one of the factors weighs in Greenberg's favor: the fact that Rhino's omissions were primarily the fault of Rhino's counsel and Rhino itself. As the district court acknowledged and contrary to the bankruptcy court's finding, any additional fees and costs incurred by Greenberg on account of the delay – all of which will be the responsibility of Rhino – do not prejudice Greenberg in any way. Likewise, the bankruptcy court erred in finding that a delay of twenty-one days constituted prejudice even where no special circumstances required immediate action. See

11

Pioneer, 507 U.S. at 398-99. Finally, contrary to the suggestions of both the bankruptcy court and the district court, there is no evidence whatsoever that the failures by Rhino and its counsel were the result of contumacious or deliberate conduct or in any way suggestive of a lack of good faith.[4]

Aside from overlooking the single order to prepare for and attend the pretrial conference, neither Rhino nor its counsel exhibited any extensive pattern of ignoring direction from the bankruptcy court. Moreover, neither the bankruptcy court nor the district court even considered lesser sanctions in this case, let alone made findings explaining why such lesser sanctions would not suffice. "We rigidly require the district courts to make these findings precisely because the sanction of dismissal with prejudice is so unsparing and we strive to afford a litigant his or her day in court if possible." Betty K Agencies, 432 F.3d at 1339 (internal quotation marks and citation omitted).

As we stated in Betty K Agencies, "dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." Id. Accordingly, we vacate the district court's December 1, 2005 order and remand to the district court. We further instruct that the district court vacate the bankruptcy

---

[4]Although neither the bankruptcy court nor the district court made an explicit finding of bad faith on the part of Rhino or its counsel, that is the clear (and unsupported) implication of their orders.

12

court's May 5, 2005 order denying Rhino's motion to reconsider, vacate the

bankruptcy court's March 15, 2005 entry of dismissal, and reinstate Rhino's

complaint. On remand, the bankruptcy court should consider alternative and less

drastic sanctions for Rhino's negligence and should proceed to hear the case on the

merits.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**